**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JASON ANTONIO MOORE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  Case No. 08-CV-0720-CVE-FHM |
| | ) |
| ERIC FRANKLIN, Warden, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Jason Antonio Moore filed his petition (Dkt. # 1) pro se. Respondent filed a response (Dkt. # 7) to the petition and provided the state court record (Dkt. ## 7, 8, and 9) necessary for adjudication of the claims raised in the petition. Petitioner filed a reply (Dkt. # 12) to the response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

On May 20, 2005, Petitioner and Cordero Rosales Sandoval went with Jessica Sandoval, Mr. Sandoval's sister, and her friend Duandelyn Holland, to the apartment of Hector Jacobo to attempt to recover $80 Ms. Sandoval believed to be owed to her by Mr. Jacobo. While en route to the apartment, Ms. Holland observed Petitioner holding a 3-4 foot long object wrapped in a towel. Once they arrived at the apartment, Petitioner and Mr. Sandoval exited the car. After only a few minutes, before Ms. Sandoval could even get the car parked, the men returned at a run. Mr. Sandoval looked shocked. Petitioner was sweaty and looked scared. Ms. Holland saw Petitioner holding a rifle. Mr. Sandoval had no weapon. Ms. Holland asked Petitioner, "What happened?" At first, Petitioner

repeatedly answered, "nothing happened." However, Petitioner eventually told Ms. Holland that he had "killed two people."

Police arrived at the apartment and found two people with gunshot wounds. Antonio Alvarez was pronounced dead at the scene. Amanda Al-Rifai was unconscious, but alive. She was transported to the hospital where she later died. Petitioner and Mr. Sandoval were taken into custody as suspects in the shootings. Police interviewed both men. Petitioner was crying and emotional during his interview. After initially stating that "I didn't shoot anybody," he finally admitted to Sgt. Mike Huff that he shot the two people because he was scared.

As a result of those events, Petitioner was charged along with his co-defendant, Cordero Sandoval, in Tulsa County District Court, Case No. CF-2005-2347, with two counts of First Degree Murder. At the conclusion of a jury trial, Petitioner was found guilty as charged.[1] On May 23, 2006, the trial court judge sentenced Petitioner in accordance with the jury's recommendation to life imprisonment on each count, with the sentences to be served consecutively. At trial, Petitioner was represented by Assistant Public Defender Curtis Allen.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). On direct appeal, Petitioner, represented by Assistant Public Defender Stuart Southerland, raised the following propositions of error:

> Proposition 1: The district court improperly restricted defense counsel's voir dire, thus impairing Appellant's ability to exercise peremptory challenges in an intelligent and effective manner.
>
> Proposition 2: It was error to grant the State's request to remove prospective juror Ingram for cause.

---

[1] Petitioner's co-defendant, Cordero Sandoval, was tried before a jury in a separate proceeding. He was also found guilty and sentenced to two consecutive life terms.

> Proposition 3: It was error to grant the State's request to remove prospective juror Byrd for cause.
>
> Proposition 4: Under the circumstances of this case, it was error to admit Appellant's custodial admission, which was given at the police station where recording equipment was readily available, but unused.
>
> Proposition 5: It was error for the trial judge to tell the potential jurors, during voir dire, that there is no difference between circumstantial and direct evidence.
>
> Proposition 6: It was error for the district court to refuse Appellant's requested instructions on accomplice corroboration.
>
> Proposition 7: It was error to refuse Appellant's request for an instruction defining reasonable doubt.
>
> Proposition 8: The cumulative effect of the error in this case requires reversal of Appellant's convictions.

(Dkt. # 7, Ex. 1). On September 13, 2007, in Case No. F-2006-579, the OCCA found no merit to Petitioner's claims. For that reason, the state appellate court affirmed the Judgment and Sentence of the trial court. Dkt. # 7, Ex. 3. Petitioner did not file a petition for writ of certiorari at the United States Supreme Court nor did he seek post-conviction relief in the state courts prior to filing the instant habeas corpus action.

On December 8, 2008, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner identifies eight (8) grounds for relief, as follows:

> Ground 1: Petitioner was deprived of due process and equal protection of the law, when the trial court improperly restricted defense counsel's voir dire, thus impairing [Petitioner's] ability to exercise peremptory challenges in an intelligent and effective manner.
>
> Ground 2: Petitioner was deprived of due process and equal protection of the law, when the trial court granted the State's request to remove prospective juror Ingram for cause.

3

|              |             |
|--------------|-------------|
| Ground 3:    | Petitioner was deprived of due process and equal protection of the law, when the trial court granted the State's request to remove prospective juror Byrd for cause. |
| Ground 4:    | Petitioner was deprived of due process and equal protection of the law, when the State admitted a custodial admission allegedly given by Petitioner at the police station. |
| Ground 5:    | Petitioner was deprived of due process and equal protection of the law, when the trial judge informed potential jurors, during voir dire, that there is no difference between circumstantial and direct evidence. |
| Ground 6:    | Mr. Moore was deprived of due process and equal protection of the law, when the trial court refused Petitioner's requested instructions on accomplice corroboration. |
| Ground 7:    | Mr. Moore was deprived of due process and equal protection of the law, when the trial court refused Petitioner's request for an instruction defining reasonable doubt. |
| Ground 8:    | Petitioner was denied due process and equal protection of the law, by the cumulative effect of the errors occurring within his trial. |

(Dkt. # 1). Respondent filed a response (Dkt. # 7) to the petition and asserts that under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that Petitioner's claims raised in the petition were presented to the OCCA on direct appeal and are exhausted.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA on direct appeal**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).

In this case, the OCCA adjudicated Petitioner's grounds 1-8 on direct appeal. Therefore, those claims will be reviewed pursuant to § 2254(d).

**1. Claims challenging jury selection (grounds 1, 2, 3)**

As his first ground of error, Petitioner asserts that the trial court improperly restricted voir dire resulting in impairment of his ability to exercise peremptory challenges. In rejecting this claim on direct appeal, the OCCA noted that the manner and extent of voir dire lies within the discretion of the district court, and that "[t]here is no abuse of discretion so long as *voir dire* is broad enough to afford the Appellant a jury free of outside influence, bias or personal interest." See Dkt. # 7, Ex. 3 (citations omitted). The OCCA then ruled as follows:

> We have examined the entire *voir dire* examination and conclude Appellant has not shown abuse of the District Court's discretion. After its own extensive *voir dire*, the District Court directed both counsel to avoid repetitious questioning on areas already covered. Questions seeking clarification of jurors' previous responses and questions on new subject matter were properly permitted. Rule 6, *Rules for District Courts of Oklahoma*, 12 O.S.2001, Ch. 2, App. On the whole, *voir dire* was sufficient to permit the discovery of any grounds for disqualification and the intelligent exercise of peremptory challenges. Appellant concedes he cannot show an unqualified juror was seated over his objections, and thus he shows no prejudice from the procedure used by the District Court. *See Frederick v. State*, 2001 OK CR 34, ¶ 55, 37 P.3d at 927; *Ross v. Oklahoma*, 487 U.S. 81, 83-84, 108 S. Ct 2273, 2276, 101 L.Ed. 2d 80, 87 (1988). This proposition is denied.

(Dkt. # 7, Ex. 3 at 2-3).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986). In Ross v. Oklahoma, the Supreme Court specifically rejected the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. Ross, 487 U.S. at 88. "[P]eremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id. (citations omitted). Thus, any claim that the jury was impartial must focus on the jurors who ultimately sat. Id. at 86.

6

In the petition, Petitioner never suggests that any of the 12 jurors was not impartial. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to or an unreasonable application of Supreme Court law. His request for habeas corpus relief on this claim shall be denied.

In grounds 2 and 3, Petitioner alleges that the trial court erred in granting the State's requests to remove prospective jurors Ingram and Byrd for cause. On direct appeal, the OCCA rejected these claims, finding as follows:

> We review for abuse of discretion and find none. The facts concerning Juror Ingram were sufficient to show the existence of actual bias against the State, and thus warranted disqualification under 22 O.S.2001, § 659. Juror Byrd was late in her pregnancy and admitted the physical and emotional demands of a double murder case might impair her ability to give full consideration to the evidence and issues at trial. Disqualification was within the sound exercise of the Court's discretion. We will not reverse.

(Dkt. # 7, Ex. 3 at 3).

The Tenth Circuit has specifically held that federal courts may only reverse state court determinations of juror impartiality upon a showing of "manifest error." Brecheen v. Reynolds, 41 F.3d 1343, 1350 (10th Cir. 1994); see also Cannon v. Gibson, 259 F.3d 1253, 1280 (10th Cir. 2001) (deferring to a trial judge's finding as to whether a potential juror is biased unless the finding is rebutted by clear and convincing evidence); accord Sallahdin v. Gibson, 275 F.3d 1211, 1224 (10th Cir. 2002). This limited degree of review is justified by a trial judge's unique advantage in observing and evaluating the demeanor of jurors. Brecheen, 41 F.3d at 1350 (quoting Church v. Sullivan, 942 F.2d 1501, 1519 (10th Cir. 1991)).

In this case, the record reflects that Juror Ingram had been in Tulsa County District Court numerous times facing criminal charges of public intoxication and driving under the influence. See Dkt. # 9-2, Tr. Trans. Vol. III at 426-32. After questioning Juror Ingram at the bench, the trial judge granted the State's motion to dismiss for cause, finding as follows:

> He has been prosecuted a number of times in this court. In fact, the reason why I called him up here is because I recognized him on at least one case. I didn't realize he had all of those others contacts with the court. And even though he says he can be fair, his background is such that it would probably be best if he served on a civil case since [the district attorney's] office has prosecuted him and tried to put the man in prison.

Id. at 432. As to Juror Byrd, the record reflects that she was seven months pregnant at the time of Petitioner's trial. Id. at 459. After questioning Juror Byrd at the bench, the trial judge granted the State's motion to dismiss for cause, finding that:

> The woman has already told us she's had some difficulty just listening to the voir dire yesterday. She's extremely pregnant and she has indicated that she might have some difficulty if something upsetting comes up. Well, this is two counts of first degree murder. That is an upsetting situation where two people were killed by someone with a .22 rifle.

Id. at 462-63. Petitioner has presented no evidence suggesting that the trial judge's rulings regarding Jurors Ingram and Byrd resulted in "manifest error." He is not entitled to habeas corpus relief on grounds two and three.

### 2. Admission of custodial statement (ground 4)

As his fourth ground of error, Petitioner alleges that the trial court erred in admitting Sgt. Huff's testimony describing Petitioner's unrecorded custodial confession. On direct appeal, the OCCA rejected Petitioner's claim that incriminating custodial statements should be suppressed when recording equipment is present at the time of questioning and police interrogators fail to use it. Specifically, the OCCA held that:

8

> No such requirement is found in the constitutional privilege against self-incrimination or the controlling cases interpreting the contours of the privilege. *Cf. Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). Appellant's arguments are properly directed to the Legislature, which has the power to mandate such recordings in criminal investigations and determine a proper remedy for failing to do so.

(Dkt. # 7, Ex. 3 at 3-4).

The record reflects that, prior to jury selection, the trial judge held a <u>Jackson v. Denno</u>[2] hearing to determine the admissibility of Petitioner's custodial statement. At the hearing, Detective Regalado testified that, after Petitioner signed the rights waiver form acknowledging that he understood his <u>Miranda</u>[3] rights and wanted to talk to the police without an attorney present, he spoke with Petitioner who denied any involvement in the murders. <u>See</u> Dkt. # 9, Tr. Trans. Vol. I at 25, 27, 34. Detective Regalado did not record the interview. <u>Id.</u> at 29. Sergeant Huff took over the interview as Detective Regalado completed the <u>Miranda</u> process. <u>Id.</u> at 42. Sergeant Huff testified that Petitioner was upset and crying. <u>Id.</u> at 42. He also testified that, although Petitioner initially denied involvement, he eventually made an inculpatory statement. <u>Id.</u> at 46. Sergeant Huff confirmed that the interview with Petitioner was not recorded. <u>Id.</u> at 54. Both police officers testified that no threats or promises were made. <u>Id.</u> at 25, 43. In contrast to Sergeant Huff's testimony, Petitioner testified that he never made an inculpatory statement to police. <u>Id.</u> at 64. He also testified that he "felt pressured," and that the police officers were slapping him and pushing him around. <u>Id.</u> at 63. At the conclusion of the hearing, the trial judge denied Petitioner's motion to

---

[2] <u>Jackson v. Denno</u>, 378 U.S. 368 (1964).

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

9

strike Sergeant Huff's testimony based on a due process violation resulting from the police officers' failure to record Petitioner's interview. The trial judge stated that it would be "impractical" to require police to record every statement taken at the police station. Id. at 67. The trial judge further found that Petitioner's averments that he was slapped and pushed, but made no inculpatory statement, were inconsistent. Id. at 70.

As discussed above, Petitioner is not entitled to habeas corpus relief on this claim unless he demonstrates that the OCCA's adjudication was "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Court agrees with the OCCA's determination that none of the Supreme Court's cases governing admissibility of custodial statements stands for the proposition that incriminating custodial statements should be suppressed when recording equipment is present at the time of questioning and police interrogators fail to use it. As a result, when the OCCA entered its order affirming Petitioner's convictions on direct appeal, there was no clearly established law as determined by the United States Supreme Court providing guidance on the issue of whether Petitioner's custodial statement should have been suppressed because it was unrecorded. Cf. Carey v. Musladin, 549 U.S. 70, 77 (2006) (concluding that "[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ied] clearly established Federal law'" (citing 28 U.S.C. § 2254(d)(1)). Therefore, this Court cannot find that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 3. Trial judge's voir dire characterization of evidence (ground 5)

As his fifth proposition of error, Petitioner alleges that the trial judge violated his rights to due process and equal protection by commenting during voir dire that direct and circumstantial evidence are the "same." On direct appeal, the OCCA cited OUJI-CR (2nd) 9-4 (providing that "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence"), and rejected Petitioner's challenge to the comments, finding as follows:

> We note here that the jurors were given written instructions defining direct and circumstantial evidence. The District Court's comments simply emphasized that jurors are permitted to determine the weight and credibility of evidence admitted at trial, regardless of whether evidence is direct or circumstantial. This is a correct statement of the law.

(Dkt. # 7, Ex. 3 at 4).

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of

justice." United States v. Tome, 3 F.3d 342, 353 (10th Cir. 1993) (quoting United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted)), rev'd, 513 U.S. 150 (1995).

Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair by the trial court's explanation of circumstantial and direct evidence during voir dire. As noted by the OCCA, Petitioner's jury received a written instruction regarding circumstantial and direct evidence. See Dkt. # 9-6, O.R., Instruction No. 21, at page 106 of 233. Furthermore, the trial judge's comments during voir dire were not incorrect statements of the law. As a result, the trial court's voir dire statements concerning circumstantial and direct evidence did not render Petitioner's trial fundamentally unfair. Petitioner is not entitled to habeas corpus relief under § 2254(d) on ground four.

### 4. Refusal to give requested instructions (grounds 6 and 7)

As his sixth ground of error, Petitioner complains that the trial court refused to give an instruction on accomplice corroboration. On direct appeal, the OCCA found no abuse of discretion by the trial court as follows:

> The legal standard for whether the trial court must give a requested instruction on accomplice corroboration "is whether [the witness] could be indicted for the offense for which the accused is being tried." *Carter v. State*, 1994 OK CR 49, ¶ 29, 879 P.2d 1234, 1246. The District Court applied the correct legal standard in ruling on Appellant's request. The determination that the State's witnesses were not accomplices is factually supported by the record and involves no abuse of discretion. *Id.* Further, Appellant can show no prejudice from the denial of an accomplice instruction. Evidence of Appellant's confession to the crimes and his statements indicating knowledge of how the crimes were committed corroborated the testimony of the alleged accomplices. Appellant has not been convicted in violation of section 742.

(Dkt. # 7, Ex. 3 at 5).

In ground seven, Petitioner complains that the trial court erred in refusing to give a jury instruction defining reasonable doubt. The OCCA rejected this claim, finding that:

> Our cases have long resisted attempts to define for jurors what constitutes proof beyond a reasonable doubt, or when a particular doubt about guilt is reasonable. *Wacoche v. State*, 1982 OK CR 55, ¶ 21, 644 P.2d 568, 573 (holding ". . . it is error for any party, including the trial court, to attempt to define 'reasonable doubt' to the jury"). Appellant's claim that our modification of the uniform instruction on circumstantial evidence in *Easlick v. State*, 2004 OK CR 21, 90 P.3d 566, requires a departure from this longstanding rule is unconvincing.

(Dkt. # 7, Ex. 3 at 5-6).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes, 46 F.3d at 984 ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Petitioner has failed to demonstrate that the OCCA's adjudication of these claims was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). There was no evidence presented by the state that the two state's witnesses, Duandelyn Holland and Jessica Sandoval, were aware of any plan to go to Hector

Jacobo's apartment to rob or murder the occupants. As a result, they were not accomplices and their testimony did not require corroboration. Therefore, an instruction pursuant to Okla. Stat. tit. 22, § 742, was not warranted. Furthermore, it would have been error for the trial court to give an instruction defining reasonable doubt. Petitioner's trial was not rendered fundamentally unfair as a result of the trial court's failure to instruct the jury as requested by Petitioner. Petitioner is not entitled to habeas corpus relief under § 2254(d) on grounds six and seven.

### 5. Cumulative error (ground 8)

As his eighth proposition of error, Petitioner claims that he is entitled to reversal of his convictions based on cumulative error. The OCCA rejected this claim on direct appeal, stating that because there were "no significant errors, there is no accumulation of error causing prejudice to Appellant or undermining our confidence in the outcome of the trial." See Dkt. # 7, Ex. 3.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). Having found no error in this case, the Court finds no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this ground.

**C. Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate Judgment shall be entered in this case.

**DATED** this 1st day of March, 2012.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT